[Cite as *State v. Rivers*, 2024-Ohio-4868.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MICHAEL A. RIVERS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 23 MA 0124, 23 MA 0126**

---

Criminal Appeals from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2021 CR 00789

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Edward F. Borkowski*, *Jr.*, for Defendant-Appellant.

Dated: October 4, 2024

**DICKEY, J.**

{¶1} Appellant, Michael Rivers, appeals from the November 3, 2023 judgment of the Mahoning County Court of Common Pleas convicting him for aggravated robbery, robbery, felonious assault, having weapons while under disability, and grand theft and consecutively sentencing him to an aggregate prison term of 20 years (minimum) to 23 and one-half years (maximum) following a jury trial. The sentence was ordered to be served concurrently to a sentence Appellant was serving for a conviction in Trumbull County Court of Common Pleas, Case No. 20 CR 292.

{¶2} In these consolidated appeals, Appellant raises nine assignments of error, asserting: (1) his waiver of counsel was not knowing, intelligent, and voluntary; (2) he was prejudiced by being "compelled" to appear at trial in jail clothing; (3) his charge of having weapons while under disability should have been severed from the remaining charges; (4) the admission of his prior convictions violated his right to a fair trial; (5) his convictions were against the manifest weight of the evidence; (6) the trial court's imposition of consecutive sentences was contrary to law and its findings were unsupported by the record; (7) the court erred in denying his motion for new trial; (8) his trial counsel rendered ineffective assistance; and (9) he was denied a fair trial because of cumulative error.

{¶3} Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶4} On December 30, 2021, Appellant was indicted by the Mahoning County Grand Jury on five counts: count one, aggravated robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1) and (C); count two, robbery, a felony of the second degree in violation of R.C. 2911.02(A)(2) and (B); count three, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A) and (D)(1)(a); count four, having weapons while under disability, a felony of the third degree in violation of R.C. 2923.13(A)(2), (3), and (B); and count five, grand theft, a felony of the third degree in violation of R.C. 2913.02(A)(1) and (B)(4). All five counts included three year firearm specifications pursuant to R.C. 2941.145(A). Counts one, two, and three also included notice of prior conviction specifications under R.C. 2929.13(F)(6). Appellant appeared pro se at his

arraignment and entered a not guilty plea. Appellant also waived his right to a speedy trial.

{¶5} A status conference was held on February 1, 2022. The trial court discussed with Appellant the dangers of proceeding pro se and told him he would be subject to the same rules as a lawyer. Appellant said, "I understand." (2/1/2022 Status Conference Tr., p. 3). The court reminded Appellant that he had the right to counsel and indicated it was willing to appoint standby counsel. The trial judge stated:

> . . . I mean, I think it's a mistake for you to represent yourself. I understand you might have had some disagreements with your lawyers in the past, but I don't want to see you prejudice yourself by trying to go up against a seasoned prosecutor. Again, that's your decision, that's your choice, but maybe you should think about it.

(*Id.* at p. 5).

{¶6} After discussing Appellant's speedy trial waiver, the court again advised Appellant to consider the appointment of counsel stating, "I want you to think about counsel though, okay?" (*Id.* at p. 6). Appellant nodded his head.

{¶7} The matter returned for a pretrial on March 3, 2022. The trial court again tried to convince Appellant to accept appointed counsel but he refused. The court then tried to convince Appellant to allow it to appoint standby counsel. The court reiterated to Appellant that he is facing "very serious charges" and if convicted, "a very long time in prison." (3/3/2022 Pretrial Tr., p. 7). Nevertheless, Appellant remained steadfast in his choice to proceed pro se.

{¶8} The matter returned for another pretrial on April 6, 2022. That hearing addressed a number of Appellant's pro se motions and the trial court again took the opportunity to caution Appellant about representing himself. Finally, Appellant agreed to have counsel appointed. On April 8, 2022, the court appointed Attorney Lynn Maro to represent Appellant moving forward in this matter. Attorney Maro represented Appellant until August 24, 2023.

{¶9}   On May 17, 2022, Appellant, through counsel, filed a motion for relief from prejudicial joinder (weapons under disability).  That motion was never ruled upon by the trial court.

{¶10}   On December 22, 2022, the trial court held another pretrial.  The court noted that Appellant had been convicted by a jury in the Trumbull County case and received a 14-year prison sentence.  The State offered Appellant a plea deal that would involve recommending a prison term served concurrently to the Trumbull County case.  Appellant declined the offer and wanted to proceed to trial.

{¶11}   On July 31, 2023, Appellant sent a letter to the trial court indicating he wanted to revert to self-representation.  At the pretrial on August 24, 2023, Appellant again asserted his right to represent himself.  The court discussed with Appellant that he had just done a criminal trial pro se in Trumbull County and lost.  Nevertheless, Appellant said he wanted to proceed pro se.  However, the trial judge stated, "I'm going to have somebody standby during your trial so you can consult with if there's an evidentiary issue." (8/24/2023 Pretrial Tr., p. 5).

{¶12}   The parties also discussed a recent offer that Appellant rejected in which his sentence in this matter would have run concurrently to his sentence in the Trumbull County case and would result in him serving no prison time beyond the sentence in that other case.  Appellant indicated he understood the offer and the difference between concurrent and consecutive sentences as well as the fact that the offer would allow him to enter an *Alford* plea.  The court also noted the trial date of October 23, 2023 was firm and going forward.

{¶13}   On August 28, 2023, the trial court granted Appellant's request of self-representation after finding his waiver of court appointed counsel was knowing, intelligent, and voluntary.  On September 1, 2023, Appellant filed a pro se motion to continue the jury trial which was overruled by the trial court.

{¶14}   Appellant's decision to proceed pro se was addressed again at a pretrial on September 11, 2023.  The trial court and the State discussed the charges and possible sentences with Appellant.  Appellant again indicated he understood the terms of the deal and rejected the plea offer.  Appellant also signed a written waiver of his right to counsel that was filed that same date.

{¶15} Another pretrial was held on September 20, 2023. Once again, Appellant rejected the plea offer and asserted he wished to proceed pro se. The next day, Appellant filed another motion to continue the jury trial which was overruled by the trial court. At the final pretrial on October 20, 2023, the trial court appointed standby counsel.

{¶16} A jury trial was held on October 23, 2023. The trial court again discussed the risks of pro se representation and standby counsel was present.

{¶17} A.R. testified for the State that she first met Appellant through a mutual friend, Heather Weir, and had known Appellant for about eight or nine years. Weir and Appellant were in a prior romantic relationship and share a child. A.R. began a romantic relationship with Weir toward the end of 2019 and Appellant was unhappy that they were a couple.

{¶18} On May 4, 2021, A.R. and Weir were taking a trip to Las Vegas and planned to leave from A.R.'s house in Austintown. While they were loading luggage in their car, Appellant came from the back of the vehicle and attacked A.R. Appellant struck A.R. with a handgun, as well as his fist, before kicking her while she was on the ground. Appellant also pointed his gun at A.R. while she was on the ground.

{¶19} A.R. had a firearm of her own in the car which she attempted to retrieve in order to defend herself. A.R.'s firearm was legally purchased, Serial No. 380506284. Appellant wrestled A.R.'s gun from her possession before running off. A.R. later discovered the magazine for her gun in her backyard. A.R. and Weir called 911. The 911 video recording was played for the jury. (State's Exhibit 1). Stephen Sinn, dispatch supervisor at Austintown Police Department ("APD"), testified for the State that the video recording accurately recited the 911 calls. Anthony Morucci, an officer at APD, testified for the State that he took the initial report, interviewed A.R. and Weir, and photographed A.R.'s injuries at the scene. (State's Exhibit 4).

{¶20} An ambulance transported A.R. to the hospital. Luis Marconcini, a resident physician at Mercy Health, treated A.R. (described as an "assault victim.") (10/23/2023 Jury Trial Tr., p. 316). Dr. Marconcini testified for the State that A.R. had lacerations to her head due to being hit with a handgun and also experienced pain to her neck and hands. The doctor treated A.R.'s injuries and gave her stitches.

{¶21} Weir testified for the State that she told Appellant that she and A.R. were going to Las Vegas to celebrate A.R.'s birthday. Appellant showed up at Weir's place of employment two days before the scheduled trip telling her he did not want her to go. Weir said Appellant did not approve of her relationship with A.R. On the date of the incident, while Weir and A.R. were loading luggage in the car, Appellant came running from the side of the house and began hitting A.R. with a gun. Weir saw A.R. try to get her gun while Appellant was beating her. Appellant pointed his gun at A.R. Appellant got possession of A.R.'s gun and ran to the back of the house.

{¶22} Before Appellant concluded his cross-examination of Weir, he asked the trial court to appoint standby counsel and the court granted his request. Defense counsel did not ask additional questions of Weir and the State called its next witness.

{¶23} Douglas Scharsu, a detective at Youngstown Police Department ("YPD"), testified for the State that he first met A.R. in the hospital emergency room following her attack. A.R. indicated that Appellant had taken her firearm and provided the serial number to the detective. Detective Scharsu revealed Appellant was under indictment at the time of the offense for a case in Trumbull County. The detective further identified Appellant's other prior felony convictions to establish he was under disability at the time of the offense. Defense counsel stipulated that State's Exhibits 41-46 were each authentic records reflecting Appellant's prior felony convictions.

{¶24} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court.

{¶25} Before Appellant took the stand, the trial court advised him that he had a right not to testify. Appellant said he understood his right but wanted to testify nonetheless.

{¶26} Appellant began his testimony by attempting to use his prior convictions to his benefit. Appellant revealed responsibility for his actions by entering guilty pleas in his prior cases. Appellant was at A.R.'s house on the day at issue as alleged. Appellant was afraid Weir was going to take his daughter away. Appellant said he thought A.R. was going to shoot him so he hit her on the side of her head. Appellant said they fell to the ground wrestling for the gun when he hit A.R.'s head a second time. Appellant

remembered "taking something" from A.R. and that she took off running. (*Id.* at p. 450). Appellant then clarified he did take A.R.'s gun and threw it as he was running off.

{¶27} On cross-examination, Appellant admitted he caused A.R.'s injuries. Appellant admitted he was not invited and was not welcomed at A.R.'s home. Appellant said he parked his car down the street from A.R.'s house so that A.R. and Weir would not know he was coming. When asked if he did something wrong that day, Appellant stated, "Yeah. I didn't have a choice; did I?" (*Id.* at p. 458). Appellant brought a BB gun with him and admitted to hitting A.R. with it.

{¶28} Appellant admitted that at the time of his offenses, he was under indictment in Trumbull County for burglarizing Weir's house and said that A.R. was a witness in that matter. Appellant was angry with A.R. because she wrote a statement against him in his Trumbull County case that he feared would have him put in jail. Following Appellant's testimony, the defense rested.

{¶29} Appellant renewed his motion for acquittal which was overruled by the trial court.

{¶30} The jury found Appellant guilty on all counts as charged in the indictment.

{¶31} On November 2, 2023, Appellant, through appointed counsel, filed a Crim.R. 33 motion for new trial and a Crim.R. 29(C) motion for acquittal during the sentencing hearing. The trial court denied Appellant's motions. With respect to the Crim.R. 33 motion, the trial court stated Appellant "never made a motion to separate the cases and to keep the weapons under disability case from the jury hearing it" and "it was one of the elements of the offense anyway." (11/2/2023 Sentencing Hearing Tr., p. 7-8).

{¶32} On November 3, 2023, the trial court imposed the following sentence: count one, aggravated robbery, a felony of the first degree, seven to ten and one-half years plus three years on the gun specification; count two, robbery, a felony of the second degree, merged with count one; count three, felonious assault, a felony of the second degree, four years plus three years on the gun specification; count four, having weapons while under disability, a felony of the third degree, 36 months plus three years on the gun specification; and count five, grand theft, a felony of the third degree, merged with count one. The court ordered the prison terms in counts one, three, and four to be served consecutively, for an aggregate term of 20 to 23 and one-half years in prison, concurrent with Appellant's

Trumbull County sentence. The court granted Appellant 344 days of jail-time credit and notified him that his sentence includes a mandatory period of post-release control up to five years but not less than two years.

{¶33} Appellant filed two appeals, Case Nos. 2023 MA 0124 and 2023 MA 0126, which this court consolidated, and raises nine assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**APPELLANT DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE HIS RIGHT TO COUNSEL.**

{¶34} In his first assignment of error, Appellant argues his waiver of counsel was not knowing, intelligent, and voluntary.

> The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.

*State v. St. Thomas*, 2024-Ohio-2568, ¶ 17 (7th Dist.), quoting *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806 (1975).

> To establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *State* v. *Gibson,* 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. Crim.R. 44 requires waiver of counsel to be made in open court and for a serious offense, such as the one before us, the waiver must be in writing. Crim.R. 44(C).

*State v. Hackett*, 2019-Ohio-1091, ¶ 27 (7th Dist.).

Furthermore, in order for the defendant to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "'he knows what he is doing and his choice is made with eyes open.'" *Faretta* at 835, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). However, there is no single test to determine if a defendant has knowingly, intelligently, and voluntarily waived his right to counsel. *State v. Mootispaw*, 4th Dist. No. 09CA33, 2010-Ohio-4772, ¶ 21. Instead, appellate courts should independently examine the record, i.e., conduct a de novo review, to determine whether the totality of circumstances demonstrates a knowing, intelligent, and voluntary waiver of the right to counsel. *Id.*

*Id.* at ¶ 30.

{¶35} In his brief, Appellant includes an exchange before trial where he desired to make an oral motion to dismiss and wished to be compensated $70,000 in redemption. The trial court overruled his motion as it had no basis in law or fact. Appellant believes his "apparent use of 'sovereign citizen' phrasing and arguments is a clear indication that he lacked the understanding and appreciation of the actual rules and procedures of the proceedings[,]" and thus, should have been afforded leeway. (6/12/2024 Appellant's Brief, p. 9). We disagree.

{¶36} Appellant's contention that his waiver of counsel was not knowing, intelligent, and voluntary belies the record. The waiver of counsel was made both in open court and in writing. The trial court explained the dangers and disadvantages of self-representation, tried talking Appellant out of representing himself, and told him he would be subject to the same rules as a lawyer. Appellant said, "I understand." *See* (2/1/2022 Status Conference Tr., p. 3). The court reiterated to Appellant the "very serious charges" he was facing and if convicted, "a very long time in prison." *See* (3/3/2022 Pretrial Tr., p. 7). Nevertheless, Appellant remained steadfast in his choice to proceed pro se. The court also even took the extra step in appointing standby counsel.

{¶37} As addressed, the court discussed with Appellant the risks of pro se representation on seven occasions: at pretrial hearings on February 1, 2022, March 3, 2022, April 6, 2022, August 24, 2023, September 11, 2023, and September 20, 2023; and again before the jury trial commenced on October 23, 2023. The waiver of counsel was not discussed between April 6, 2022 and August 24, 2023 because Appellant agreed to have court appointed counsel during that time period. The trial court appointed counsel but Appellant ended up rejecting her representation. The court initiated further by appointing standby counsel which Appellant utilized midway through the jury trial.

{¶38} In addition, Appellant had prior experience representing himself in his Trumbull County felony case just before the instant matter. Importantly, Appellant also signed a written waiver of his right to counsel in this case on September 11, 2023.

{¶39} Based on the totality of the circumstances, the record demonstrates the trial court made sufficient inquiries to insure that Appellant's waiver of counsel was knowingly, intelligently, and voluntarily made. *Hackett,* 2019-Ohio-1091, at ¶ 30.

{¶40} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

### APPELLANT WAS DENIED A FAIR TRIAL BY BEING COMPELLED TO APPEAR IN JAIL CLOTHING.

{¶41} In his second assignment of error, Appellant contends he was prejudiced by being "compelled" to appear at trial in jail clothing.

Courts have recognized a defendant may be prejudiced by appearing at trial in jail clothes. *State v. Collins*, 6th Dist. No. L–05–1399, 2007-Ohio-3578, ¶ 27, citing *Estelle v. Williams*, 425 U.S. 501, 507 (1976). In *Estelle*, the United States Supreme Court held that a defendant's right to due process is violated when he is compelled to stand trial before a jury while wearing identifiable prison clothing. *Id.* at 512. At the same time, the Court declined to establish a per se rule to invalidate any conviction where the accused wore prison garb at trial. *Id.* See *State v. Smith*, 2d Dist. No. 21058, 2006-Ohio-2365, ¶ 26. In reaching its decision, the Court recognized

both that a defendant may be prejudiced by appearing in jail clothing and that a defendant might purposely elect, as a matter of trial strategy, to stand trial in such attire. *Estelle* at 504-505. See *State v. Gandy*, 1st Dist. No. C-050804, 2006-Ohio-6282, ¶ 4. Taking into consideration these apparently opposing principles, the relevant inquiry becomes not merely whether the defendant appeared before the jury in prison attire, but whether he was compelled to appear in prison garb. *Estelle*, 425 U.S. at 507; *Gandy* at ¶ 4; and *Smith* at ¶ 26.

*State v. Duncan*, 2017-Ohio-9378, ¶ 9 (7th Dist.).

**{¶42}** This case took nearly two years to get to trial. There is nothing in the record indicating Appellant was compelled to wear prison clothing. Appellant admits that he neither filed a motion to appear in civilian clothing nor objected to being present at trial in his jail uniform. Where a defendant had ample opportunity to secure civilian clothing before trial, but did not, the defendant cannot show he was "compelled" to stand trial in jail clothing. *State v. Hawthorne*, 2016-Ohio-203, ¶ 28 (8th Dist.). Also, "'the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.'" *Duncan* at ¶ 10, quoting *Estelle*, 425 U.S. at 512-513. Because Appellant failed to object at trial, he has waived this argument. *Duncan* at ¶ 11.

**{¶43}** Notwithstanding waiver or any plain error, the record reveals the trial court gave a cautionary instruction to the jury at the beginning of trial which is further indication that no prejudice existed. *See State v. R.W.*, 2022-Ohio-2771, ¶ 31 (8th Dist.), citing *State v. Dalmida*, 2015-Ohio-4995, ¶ 21 (1st Dist.), citing *State v. Fears*, 86 Ohio St.3d 329, 334 (1999) (jury is presumed to follow court's instruction to disregard defendant's appearance in jail clothing). Specifically, the court stated:

I do want to give you an instruction, a living instruction relative to defendant in this action, Mr. Rivers. Mr. Rivers has a constitutional right under the Sixth Amendment of the United States Constitution to have counsel appointed for him. He also has a right to waive counsel,

representation of counsel and to represent himself, which is known as pro se representation.

Mr. Rivers chose to waive his right to an attorney in this matter and chooses to proceed pro se. And I want you to give him the same consideration that you would give the State of Ohio in this matter and disregard the fact any negative connotations of the fact that he's sitting here in his orange prison garment. He has a right to request civilian clothing and he chose not to do that in this matter. And so I just want you to give him the same consideration, I don't want you to think negative of him. He has an absolute right to represent himself, and I just wanted to state that right out front.

(10/23/2023 Jury Trial Tr., p. 28-29).

{¶44} Appellant's second assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S "MOTION FOR RELIEF FROM PREJUDICIAL JOINDER."**

## ASSIGNMENT OF ERROR NO. 4

**APPELLANT WAS DENIED A FAIR TRIAL DUE TO EXCESS EVIDENCE OF PRIOR CONVICTIONS.**

## ASSIGNMENT OF ERROR NO. 7

**THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR A NEW TRIAL.**

{¶45} In his third assignment of error, Appellant alleges that his having weapons while under disability charge should have been severed from the remaining charges. In his fourth assignment of error, Appellant claims that the admission of his prior convictions violated his right to a fair trial. In his seventh assignment of error, Appellant maintains the

Case Nos. 23 MA 0124, 23 MA 0126

trial court erred in denying his motion for new trial in which he argued that his having weapons while under disability charge should have been severed from his other charges. Because these assignments are interrelated, we will address them together for ease of discussion.

{¶46} Crim.R. 8(A), "Joinder of Offenses," states:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

Crim.R. 8(A).

{¶47} The law generally favors joinder of multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied. *State v. Franklin,* 62 Ohio St.3d 118, 122 (1991).

{¶48} Pursuant to Crim.R. 14, it may be necessary to separate trials to prevent prejudice. *State v. Brinkley,* 2005-Ohio-1507, ¶ 29. Crim.R. 14, provides, in relevant part: "If it appears that a defendant . . . is prejudiced by a joinder of offenses . . . in an indictment . . ., the court shall order an election or separate trial of counts . . . or provide such other relief as justice requires."

> "When a defendant claims that joinder is improper, he must affirmatively show that his rights have been prejudiced." (Citations omitted.) [*State v.*] *Quinones*[, 2005-Ohio-6576] at ¶ 38 [(11th Dist.)]. To establish prejudice, "(t)he accused must provide the trial court with sufficient information demonstrating that he would be deprived of the right to a fair trial if joinder is permitted." *Id.,* citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "The state may negate the defendant's claim of prejudice by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the

other, severed offense, pursuant to Evid.R. 404(B); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct." *Quinones* at ¶ 39, citing *Franklin* at 122, 580 N.E.2d 1.

. . .

. . . [W]hen a defendant fails to renew a motion to sever at the conclusion of the presentation of all of the evidence at trial * * * it is (forfeited) and the matter is reviewed for plain error." *State v. Jackson*, 11th Dist. Lake No. 2017-L-140, 2018 WL 3862920, 2018-Ohio-3241, ¶ 22, citing *State v. Appenzeller*, 11th Dist. Lake No. 2006-L-258, 2008 WL 5451425, 2008-Ohio-7005, ¶ 75-76. . . . "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." (Citation omitted.) *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001).

*State v. Patterson*, 2023-Ohio-2350, ¶ 58, 60 (11th Dist.).

{¶49} "Evidence is simple and direct when it is apparent that the jury was not confused about which evidence proved which act." *State v. Smith*, 2023-Ohio-3587, ¶ 47 (7th Dist.) citing *Harrison* at ¶ 60, citing *State v. Harris*, 2015-Ohio-2686, ¶ 30 (7th Dist.); *State v. Coley*, 93 Ohio St.3d 253, 259 (2001).

{¶50} As stated, on May 17, 2022, Appellant filed a motion to sever the having weapons while under disability charge from the remaining charges while he was represented by counsel. That motion was never ruled upon by the trial court and is therefore, presumed to be denied. *See State v. Panezich*, 2018-Ohio-2812, ¶ 42 (7th Dist.). Appellant did not renew the motion to sever prior to the start of trial or at the conclusion of the State's case and thus, fails to show plain error. *See Patterson* at ¶ 60. The joinder of Appellant's offenses did not impact his trial because the evidence as to each crime was "simple and direct" and the trial court gave a limiting instruction concerning his prior felony convictions. Specifically, the court stated:

Evidence of prior conviction. Evidence was received about the commission of a crime other than the offenses with which the defendant is charged in his trial. That evidence was received only for the limited purpose of providing an element of the offense of having weapons while under disability.

It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity with that character.

(10/23/2023 Jury Trial Tr., p. 550).

{¶51} The State was required to introduce Appellant's prior convictions to establish that he was under a firearm disability. Before the foregoing instruction, Appellant stipulated to the admissibility of each of his prior convictions. (State's Exhibits 41-46). The trial court accepted the stipulation. In addition, overwhelming evidence exists in the record of Appellant's guilt, including his own admission that he beat A.R. and took her gun. *See State v. Watson*, 2023-Ohio-3137, ¶ 52-53 (5th Dist.) (holding that the existence of overwhelming evidence of guilt will prevent reversal relative to severance).

{¶52} In addition, we review a trial court's ruling on a motion for new trial for an abuse of discretion. *State v. Knight*, 2024-Ohio-2176, ¶ 62 (7th Dist.), citing *State v. Schiebel*, 55 Ohio St.3d 71, 76 (1990). An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶53} Again, on November 2, 2023, Appellant filed a Crim.R. 33 motion for new trial during the sentencing hearing, arguing that his having weapons while under disability charge should have been severed from his other charges. The trial court denied the motion, stating Appellant "never made a motion to separate the cases and to keep the weapons under disability case from the jury hearing it" and "it was one of the elements of the offense anyway." (11/2/2023 Sentencing Hearing Tr., p. 7-8). However, as addressed, Appellant did in fact file a motion to sever on May 17, 2022.

{¶54} Nevertheless, the record reveals Appellant spoke about his prior court cases through his questioning of witnesses while acting pro se. Appellant also exposed

himself to the inclusion of those prior convictions by taking the stand. Thus, the jury heard about Appellant's prior convictions from Appellant himself, both as his own counsel and as the defendant. Further, Appellant admitted to committing the acts of which he was accused. Also, when represented, trial counsel asked Appellant about his prior convictions, highlighting that he had entered a guilty plea in those matters.

{¶55} Based on the facts presented, we find neither an abuse of discretion nor plain error.

{¶56} Appellant's third, fourth, and seventh assignments of error are without merit.

## ASSIGNMENT OF ERROR NO. 5

## APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶57} In his fifth assignment of error, Appellant asserts his convictions were against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. . . .

> The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 2018-Ohio-2766, ¶ 47-48 (7th Dist.).

Case Nos. 23 MA 0124, 23 MA 0126

{¶58} "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶59} Appellant attempts to downplay the incident by stressing he merely brought a BB gun to A.R.'s house on the day at issue. However, "[a]lthough it is not a firearm, a BB gun can be a deadly weapon if [a] BB is expelled at a sufficient rate of speed." *State v. Johnson*, 2015-Ohio-3113, ¶ 49 (5th Dist.), citing *State v. Brown*, 101 Ohio App.3d 784, 788 (1st Dist. 1995). "Courts agree that regardless of whether a BB or pellet is powerful enough to cause death, a BB gun can be a deadly weapon because the body of the gun itself can be used to bludgeon." *Johnson* at ¶ 50, citing *State v. Hicks*, 14 Ohio App.3d 25 (8th Dist. 1984); *State v. Ginley*, 2009-Ohio-4701 (8th Dist.).

{¶60} Again, A.R. testified for the State that she first met Appellant through Weir. Weir and Appellant were in a prior romantic relationship and share a child. A.R. began a romantic relationship with Weir toward the end of 2019 and Appellant was unhappy that they were a couple.

{¶61} On May 4, 2021, A.R. and Weir were taking a trip to Las Vegas and planned to leave from A.R.'s house. While they were loading luggage in their car, Appellant came from the back of the vehicle and attacked A.R. Appellant struck A.R. with a handgun, as well as his fist, before kicking her while she was on the ground. Appellant also pointed his gun at A.R. while she was on the ground.

{¶62} A.R. had a firearm of her own in the car which she attempted to retrieve in order to defend herself. A.R.'s firearm was legally purchased, Serial No. 380506284. Appellant wrestled A.R.'s gun from her possession before running off. A.R. later discovered the magazine for her gun in her backyard. A.R. and Weir called 911. The 911 video recording was played for the jury. (State's Exhibit 1). A dispatch supervisor at APD testified for the State that the video recording accurately recited the 911 calls. A police officer at APD testified for the State that he took the initial report, interviewed A.R. and Weir, and photographed A.R.'s injuries at the scene. (State's Exhibit 4).

{¶63} An ambulance transported A.R. to the hospital. A resident physician at Mercy Health treated A.R., described as an "assault victim." (10/23/2023 Jury Trial Tr., p. 316). The doctor testified for the State that A.R. had lacerations to her head due to

being hit with a handgun and also experienced pain to her neck and hands. The doctor treated A.R.'s injuries and gave her stitches.

{¶64} Weir testified for the State that she told Appellant that she and A.R. were going to Las Vegas to celebrate A.R.'s birthday. Appellant showed up at Weir's place of employment two days before the scheduled trip telling her he did not want her to go. Weir said Appellant did not approve of her relationship with A.R. On the date of the incident, while Weir and A.R. were loading luggage in the car, Appellant came running from the side of the house and began hitting A.R. with a gun. Weir saw A.R. try to get her gun while Appellant was beating her. Appellant pointed his gun at A.R. Appellant got possession of A.R.'s gun and ran to the back of the house.

{¶65} A detective at YPD testified for the State that he first met A.R. in the hospital emergency room following her attack. A.R. indicated that Appellant had taken her firearm and provided the serial number to the detective. The detective revealed Appellant was under indictment at the time of the offense for a case in Trumbull County. The detective further identified Appellant's other prior felony convictions to establish he was under disability at the time of the offense. Defense counsel stipulated that State's Exhibits 41-46 were each authentic records reflecting Appellant's prior felony convictions.

{¶66} Appellant began his testimony by attempting to use his prior convictions to his benefit. Appellant revealed responsibility for his actions by entering guilty pleas in his prior cases. Appellant was at A.R.'s house on the day at issue as alleged. Appellant said he thought A.R. was going to shoot him so he hit her on the side of her head. Appellant said they fell to the ground wrestling for the gun when he hit A.R.'s head a second time. Appellant remembered "taking something" from A.R. and that she took off running. (*Id.* at p. 450). Appellant then clarified he did take A.R.'s gun and threw it as he was running off.

{¶67} On cross-examination, Appellant admitted he caused A.R.'s injuries. Appellant admitted he was not invited and was not welcomed at A.R.'s home. Appellant said he parked his car down the street from A.R.'s house so that A.R. and Weir would not know he was coming. When asked if he did something wrong that day, Appellant stated, "Yeah. I didn't have a choice; did I?" (*Id.* at p. 458). Appellant brought a BB gun with him and admitted to hitting A.R. with it.

Case Nos. 23 MA 0124, 23 MA 0126

{¶68} Appellant admitted that at the time of his offenses, he was under indictment in Trumbull County for burglarizing Weir's house and that A.R. was a witness in that matter. Appellant was angry with A.R. because she wrote a statement against him in his Trumbull County case that he feared would have him put in jail.

{¶69} In addition to Appellant's admissions, the jury chose to believe the State's witnesses. *DeHass,* 10 Ohio St.2d at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of aggravated robbery, robbery, felonious assault, having weapons while under disability, and grand theft. *Thompkins,* 78 Ohio St.3d at 387.

{¶70} Appellant's fifth assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 6

**APPELLANT'S SENTENCE IS CONTRARY TO LAW BECAUSE THE RECORD DOES NOT SUPPORT THE IMPOSITION OF CONSECUTIVE SENTENCES.**

{¶71} In his sixth assignment of error, Appellant asserts the trial court's imposition of consecutive sentences was contrary to law and that its findings were unsupported by the record.

{¶72} R.C. 2929.14(C)(4) states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

In reviewing consecutive sentence arguments, the appellate court's standard of review is not whether the sentencing court abused its discretion; rather, the question is whether the appellate court "clearly and convincingly finds" (1) the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or (2) the sentence is otherwise contrary to law. R.C. 2953.08(G)(2)(a)-(b). A clear and convincing standard involves "a firm belief or conviction" (and is a higher standard than a mere preponderance of the evidence). *Cross v. Ledfo*rd, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

"In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. A sentence is contrary to law if the sentencing court fails to make the statutory consecutive findings. *Id.* (remanding for resentencing where the findings were not made at the sentencing hearing or in the entry).

Pursuant to R.C. 2929.14(C)(4), a felony sentencing court can impose consecutive sentences after finding: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the three options thereafter listed as (a) through (c). R.C. 2929.14(C)(4)(a)-(c). "(A) word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 140 Ohio St.3d 209 at ¶ 29.

*State v. Jensen*, 2023-Ohio-4717, ¶ 6-8 (7th Dist.).

The Ohio Supreme Court has recently spoken on the standard by which an appellate court should review a trial court's consecutive sentences findings. In *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5, the Ohio Supreme Court reconsidered its prior decision in *State v. Gwynne*, 2022-Ohio-4607, —— N.E.3d ——, and held that "(t)he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."

*State v. Grant*, 2023-Ohio-4614, ¶ 23 (5th Dist.).

{¶73} The Ohio Supreme Court has now made it clear that "an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences. *Gwynne*, 2023-Ohio-3851, ¶ 15. "The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings." *Id.* Thus, the Ohio Supreme Court in 2023 *Gwynne* specifically rejected the holding in 2022 *Gwynne* with respect to conducting a de novo review. *Id.* In short, we

Case Nos. 23 MA 0124, 23 MA 0126

should review the sentence imposed by the trial court and only reverse if the record does not clearly and convincingly support the trial court's findings. *Gwynne*, 2023-Ohio-3851; *Grant* at ¶ 23.

{¶74} At the sentencing hearing, the trial court heard from the prosecutor on behalf of the State, defense counsel on behalf of Appellant, and Appellant.

{¶75} In imposing consecutive sentences, the court found the following:

> THE COURT: . . . The court has considered the record, the statements of counsel, as well as the defendant, and the purposes and principles of sentencing pursuant to Revised Code Section 2929.11. The court has balanced the seriousness and recidivism factors set forth in Revised Code Section 2929.12, and has followed guidance by degree of felony as set forth in Revised Code Section 2929.13.
>
> Based on your criminal history, your multiple criminal felony offenses, the court's going to find that a non-prison sanction would demean the seriousness factors contained in Section 2929 of the Revised Code and a non-prison sanction would not adequately protect the public and punish you. . . .
>
> Consecutive sentences are necessary to protect the public from future crime or to punish the defendant. They're not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public. And the offenses were committed during a course of conduct and the harm so great or unusual that a single term does not reflect the seriousness of the defendant's conduct. The defendant's criminal history demonstrates a need to protect the public from future crime by the defendant, and the defendant was under post-release control, specified statutory community control or awaiting trial sentencing while he was charged with the instant offenses.

(11/2/2023 Sentencing Hearing Tr., p. 34-35, 39-40).

Case Nos. 23 MA 0124, 23 MA 0126

{¶76} The trial court made a similar pronouncement in its November 3, 2023 sentencing entry. The court again specifically stated:

> The Court has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12.
>
> . . .
>
> Pursuant to O.R.C. 2929.13(C), the Court finds the Defendant is not amenable to community control and that prison is consistent with the purposes of O.R.C. 2929.11. Further, the Court finds that a term of imprisonment is commensurate with, and not demeaning to, the seriousness of the offender's conduct and its impact on the victim and consistent with sentences for similar crimes by similar offenders.
>
> . . .
>
> Pursuant to O.R.C. 2929.14(C)(4), the Court finds that a consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense. Finally, the Court further finds that pursuant to O.R.C. 2929.14(C)(4)(c) the Defendant's criminal history demonstrates the need to protect the public from future crime by the Defendant.

(11/3/2023 Sentencing Entry, p. 1-3).

{¶77} The record in this case reflects no sentencing error. The trial court gave due deliberation to the relevant statutory considerations and properly advised Appellant regarding post-release control. The court considered the purposes and principles of

felony sentencing under R.C. 2929.11, balanced the seriousness and recidivism factors under R.C. 2929.12, and considered the prison factors under R.C. 2929.13.

{¶78} In addition, the trial court made the requisite consecutive sentence findings, which are supported by the record, at the sentencing hearing and in its sentencing entry. The court was aware of Appellant's seven other prior felony offenses, including drug possession and domestic violence, as well as his conviction in Trumbull County involving similar crimes as those here with the same parties. The court found that consecutive sentences are necessary to protect the public from future crime or to punish Appellant and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. R.C. 2929.14(C)(4). The court also found Appellant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.14(C)(4)(c).

{¶79} Accordingly, the trial court considered R.C. 2929.11, 2929.12, and 2929.13, and its imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4)(c) is supported by the record.

{¶80} Appellant's sixth assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 8

**APPELLANT'S COUNSEL WAS INEFFECTIVE.**

{¶81} In his eighth assignment of error, Appellant argues his trial counsel rendered ineffective assistance.

{¶82} "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984).

> In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland* [*, supra*]. Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for

Case Nos. 23 MA 0124, 23 MA 0126

prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.

To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair as a result of the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

. . .

[A]n ineffective assistance of counsel claim cannot be predicated upon supposition. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing *State v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

*State v. Rivers*, 2019-Ohio-2375, ¶ 20-23, 27 (7th Dist.).

{¶83} The record reveals Appellant had trial counsel then fired her. Appellant began the trial pro se. Appellant then "tagged in" standby counsel which he now complains rendered ineffective assistance by admitting his prior convictions. Counsel argued that when Appellant did something, he admitted to it, thereby asking the jury to infer that he did not commit these crimes because he did not fully admit to them. Counsel was aware that at least one of Appellant's prior convictions would come in as evidence. Counsel also heard Appellant himself discussing his other prior convictions up to that point of the trial.

{¶84} Thus, counsel's decision to admit Appellant's prior convictions appears to be trial strategy, which should not be second-guessed by this court, even if the strategy was not successful and the tactics were debatable. *State v. Brazina*, 2017-Ohio-7500, ¶ 28 (7th Dist.) (trial counsel's decision to acknowledge the appellant's prior convictions appeared to be trial strategy which would not be second-guessed and did not amount to ineffective assistance of counsel); *State v. Jozwiak*, 2020-Ohio-3694, ¶ 32 (12th Dist.) (trial counsel's reference to the appellant's prior convictions amounted to trial strategy which, even if debatable, is not a basis for finding ineffective assistance); *State v. Brauchler*, 2020-Ohio-2731, ¶ 53 (5th Dist.) (trial counsel's decision to introduce the appellant's prior convictions was found to be trial strategy and even though the strategy was ultimately not successful and the tactics were debatable, they did not form a basis for ineffective assistance).

{¶85} Upon consideration, the record establishes counsel's representation was constitutionally effective and did not affect Appellant's rights. Counsel's performance was neither deficient nor prejudicial. Appellant fails to demonstrate ineffective assistance of counsel. *See Strickland,* 466 U.S. 668.

{¶86} Appellant's eighth assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 9

**APPELLANT WAS DENIED A FAIR TRIAL DUE TO CUMULATIVE ERROR.**

{¶87} In his ninth assignment of error, Appellant alleges he was denied a fair trial because of cumulative error.

Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of error during a trial deprives a defendant of a fair trial even though each of the alleged instances of error do not individually constitute cause for reversal. *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). An error-free, perfect trial does not exist, and is not guaranteed by the Constitution. *State v. Hill,* 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996). In order to find cumulative error, a record must contain multiple instances of harmless error. *State v. Austin,* 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 64. When an appellate court determines no error has occurred, the doctrine cannot apply. *State v. Lyons,* 7th Dist. Jefferson No. 16 JE 0008, 93 N.E.3d 139, 2017-Ohio-4385, ¶ 46.

*State v. Italiano*, 2021-Ohio-1283, ¶ 35 (7th Dist.).

{¶88} As we find no error in any of Appellant's assignments of error regarding his trial and convictions, this assignment based on cumulative error clearly has no merit. *Id.*

{¶89} Appellant's ninth assignment of error is without merit.

## CONCLUSION

{¶90} For the foregoing reasons, Appellant's assignments of error are not well-taken. The November 3, 2023 judgment of the Mahoning County Court of Common Pleas convicting Appellant for aggravated robbery, robbery, felonious assault, having weapons while under disability, and grand theft and consecutively sentencing him to an aggregate

prison term of 20 years (minimum) to 23 and one-half years (maximum) following a jury trial is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case Nos. 23 MA 0124, 23 MA 0126

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**