[Cite as *State v. Smith*, 2025-Ohio-4578.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KENNETH SMITH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0058

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CR 8

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Brian A. Smith*, Brian A. Smith Law Firm, LLC, for Defendant-Appellant.

Dated: September 30, 2025

**DICKEY, J.**

{¶1} Appellant, Kenneth Smith, appeals from the December 23, 2024 judgment of the Belmont County Court of Common Pleas convicting him of possession of a fentanyl-related compound and aggravated possession of drugs (methamphetamine) and consecutively sentencing him to a total aggregate sentence of 15 to 20 and one-half years in prison following a bench trial. On appeal, Appellant asserts his convictions are not supported by the manifest weight of the evidence. Appellant also alleges his consecutive sentences are not supported by the record. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} On January 4, 2024, Appellant was indicted by the Belmont County Grand Jury on five counts: count one, possession of a fentanyl-related compound, a felony of the first degree in violation of R.C. 2925.11(A) and (C)(11)(f); count two, trafficking in a fentanyl-related compound, a felony of the first degree in violation of R.C. 2925.03(A)(2) and (C)(9)(g); count three, aggravated possession of drugs, a felony of the second degree in violation of R.C. 2925.11(A) and (C)(1)(c); count four, aggravated trafficking in drugs, a felony of the second degree in violation of R.C. 2925.03(A)(2) and (C)(1)(d); and count five, having weapons while under disability, a felony of the third degree in violation of R.C. 2923.13(A)(3) and (B). Appellant was appointed counsel and pled not guilty at his arraignment. Although Appellant had been released on bond, it was revoked after his urine tested positive for cannabinoid and cocaine.

{¶3} Appellant waived his right to a jury trial and a bench trial was held on December 17, 2024. Appellee, the State of Ohio, presented five witnesses: (1) Jason Schwarck, a detective with Belmont County Sheriff's Department ("BCSD"); (2) Michael Duplaga, an officer with the City of St. Clairsville and an assignment member with the Belmont County Special Operations Branch; (3) Tyler Grant, a detective with the Criminal Interdiction Unit at BCSD; (4) Randy Stewart, a detective and the Interdiction commander with BCSD; and (5) Dustin Hilderbrand, a detective with the Criminal Interdiction Unit at BCSD. The defense presented no witnesses.

{¶4} In the Spring of 2023, Detective Schwarck began an investigation into an individual named T.O. "Teddy" Coleman. Coleman had been previously arrested by

another law enforcement agency in Belmont County. BCSD began seeing him at an area hotel and started surveilling him. They noticed that Coleman began frequenting an address in Bellaire, Belmont County, Ohio. Detectives placed a pole camera on Trumbull Street in Bellaire in order to surveil a resident duplex, 4152 and 4154 Trumbull Street.

{¶5} Detectives noticed a particular car frequented the addresses. They connected that vehicle to a female, Cecelia DeLong. Detectives Schwarck, Hilderbrand, Grant, and Stewart observed what they believed to be drug transactions occurring at the addresses. Specifically, they observed vehicles arriving and leaving after short periods of time, people going inside and not staying long, and also people walking out to cars and having short meetings. Among others, detectives were able to identify Appellant as one of those individuals at the addresses. They noticed Appellant was taking items into the residence. Appellant would stay for periods of time that would be consistent with someone staying at the house. They also saw Appellant there at times that the vehicle registered to him was not there.

{¶6} Based on the observations from the pole camera, officers applied for a search warrant for both addresses of the duplex. On the 4154 side, the investigators believed they saw Appellant and a female, Jade Leasure, coming and going. On the 4152 side, they believed they saw Kyle Vinka and Donovan Lynn coming and going. They believed Leasure, Vinka, and Lynn to be related and that all four (including Appellant) had access to both sides.

{¶7} In accordance with the search warrant, Appellant and Leasure were found on the 4154 side of the building. On that side, officers located a safe in the upstairs bedroom closet. The safe was removed from the closet and forced open. Found inside were blue round pills, which appeared to be Oxycodone 30 milligram pills, and a set of multi-color pills. Officers believed these pills contained fentanyl based on their experience. They also found a crystalline substance in a bag as well as paraphernalia. In the same room, they found a Glock 43 handgun that had been reported stolen by Leasure. Appellant and his small child were located in the bedroom. Officers also found blue pills on the window sill, a white chunky substance on the roof, and two cell phones in the bedroom.

{¶8} The evidence was seized, bagged, and tested. The blue round pills located in the safe were shown to contain 65.66 grams (plus or minus .05 grams) of fentanyl, included a total of 602 pills, and were marked as Exhibit 3. The crystalline substance removed from the safe was marked as Exhibit 4. A set of multi-color pills, also removed from the safe, was found to contain methamphetamine and cocaine and marked as Exhibit 2. Exhibits 8 and 9 were two cell phones that were removed from the bedroom. Exhibit 8 was shown to belong to Leasure and Exhibit 9 was shown to belong to Appellant. A bag containing blue pills found on the window sill was marked as Exhibit 5. One pill from Exhibit 5 was shown to contain fentanyl. A bag containing a white chunky substance found on the roof (accessed by the window in the bedroom) was marked as Exhibit 6. Detective Schwarck testifed that after watching the video from the pole camera, he was able to confirm that no one had accessed the roof during the week they had monitored the house.

{¶9} Leasure and Appellant provided statements to law enforcement. Leasure claimed responsibility for the drugs found in the house. Leasure claimed Appellant was only there for sex and did not possess any of the drugs. By the time of Appellant's trial, Leasure was in prison for possession of portions of the drugs. Appellant also denied possession of the drugs and claimed he was at the house only to have sex with Leasure. Officers found clothes belonging to Appellant in the bedroom and some cash in a pair of jeans. Officers did not check the firearm, bags, or safe for fingerprints or DNA.

{¶10} Officer Duplaga and Detective Grant participated in the execution of the search warrant. Appellant and Leasure were arrested when they walked down the stairs from the living room area of the house on the first floor. Detective Grant was involved in removing the white chunky substance from the roof.

{¶11} Detective Stewart was in charge of the initial entry into the residence. Once the house was secure, he went upstairs to the bedroom because there was a child (Appellant's) that was left alone. Detective Stewart noticed a pistol in plain view on the shelf and a safe on the floor. The pistol was partially under some clothes. He later learned that the pistol was owned by Leasure.

{¶12} Detective Hilderbrand led the search of the 4152 side of the residence and testified that a large quantity of drugs was located in the basement and in the upstairs

bedroom. He indicated that pills located in the bedroom were believed to belong to Kyle Vinka because that is where officers believed that he slept.

{¶13} Detective Hilderbrand was one of the officers who monitored the pole camera in the days leading up to the search. He recognized a number of people entering and exiting the house, including Appellant. Appellant was one of the individuals he observed staying overnight at the residence versus those who simply visited. Detective Hilderbrand testified that all of the parties initially stayed on one side of the residence but eventually Appellant and Leasure moved to the left.

{¶14} Detective Hilderbrand also reviewed the extraction reports for the cell phones that were recovered from the residence. He noted that people messaged Appellant's phone asking about drugs and that individuals would arrive at the residence around the time of the messages. The messages were in code which the detectives recognized as describing drugs, i.e., texts would include "[b]lue monsters" and "blues" which referred to blue pressed fentanyl pills. (12/17/2024 Bench Trial Tr., p. 168).

{¶15} Detective Hilderbrand testified with respect to Facebook messenger exchanges between Appellant and other individuals. He recognized the exchanges as being with Appellant, because Appellant is known as "Truck" and the Facebook profile was "Truck's Load." (*Id.* at p. 172). In one exchange, Appellant received a message that read, "'Yo, Trey, need some of the blue monsters.'" (*Id.* at p. 174). That was followed by another message that read, "'Trey wants a few of them.'" (*Id.*). Appellant asked, "'How many?'" to which the answer was "'9.'" (*Id.*). Detective Hilderbrand testified that within a short period of time after the exchanges, a vehicle arrived at the residence and picked up Appellant.

{¶16} In other exchanges, Appellant received messages only indicating a number, such as "20" or "50." (*Id*. at p. 179). Detective Hilderbrand looked at the video from the pole camera and matched those messages to a time period when an individual would arrive at the residence. Another time, the same individual exchanged messages with Appellant about picking him up from "the house[,]" "4154/4152 Trumbull[,]" for a ride. (*Id.* at p. 184). Video from the pole camera showed Appellant leaving the residence and getting in that person's car. In other cases, Detective Hilderbrand matched messages between that individual and Appellant to video showing the person stopping at the house

to pick up Appellant. In the messages, Appellant also tells the individual to pick him up at "'[t]he house.'" (*Id*. at p. 197). Those messages also reference Appellant bringing "20" or "50." (*Id*. at p. 197-198).

{¶17} Detective Hilderbrand testified that during the time the pole camera was in place, Appellant was at the house every day. Appellant would stay overnight. There were only one or two nights when Appellant did not. Appellant and Leasure appeared to Detective Hilderbrand to be in a relationship as they were often seen coming or going together.

{¶18} On another occasion, the messages from Appellant's phone contained exchanges with an individual about purchasing a pill press. The exchange includes a discussion about the cost as well as pictures and video of the press and the press being used. Appellant asked about price, the capacity of pills the machines can press, and when the machines could be available for delivery. A purchase was agreed upon and payment terms discussed. Detective Hilderbrand testified that based on his experience, Appellant had ordered and paid for a press that would press 15-milligram pills, a usual size for Oxycodone pills. The press was received after the search and arrests.

{¶19} The trial court found Appellant guilty on counts one (possession of a fentanyl-related compound) and three (aggravated possession of drugs - methamphetamine). The court found Appellant not guilty on counts two, four, and five.

{¶20} On December 23, 2024, the trial court sentenced Appellant to an indefinite term of 11 years (minimum) to 16 and one-half years (maximum) in prison on count one and an indefinite term of four years (minimum) to six years (maximum) on count three. The sentences were ordered to be served consecutively for an aggregate total of 15 to 20 and one-half years in prison. The court granted Appellant 71 days of jail-time credit and notified him that his sentence includes a period of post-release control between two and five years.

{¶21} Appellant filed a timely appeal and raises two assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

Case No. 24 BE 0058

{¶22} In his first assignment of error, Appellant argues his convictions for possession of a fentanyl-related compound and aggravated possession of drugs (methamphetamine) are against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. . . .
>
> The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 2018-Ohio-2766, ¶ 47-48 (7th Dist.).

{¶23} "'[C]ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶24} The trial court found the State had proven that Appellant possessed fentanyl and methamphetamine under either an actual or constructive possession theory or a complicity in aiding and abetting another in possession.

> The possession of drugs can be actual or constructive. *State v. Carter*, 7th Dist. Jefferson No. 97-JE-24, 2000 WL 748140, *4 (May 30, 2000). A person's mere presence near an area where drugs are located does not establish that he constructively possessed those drugs. *State v.*

*Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, 2004 WL 2428439, ¶ 40. "'It must also be shown that the person was conscious of the presence of the object.'" *State v. Vaughn*, 7th Dist. Mahoning, 2022-Ohio-3615, 197 N.E.3d 644, ¶ 21, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982).

But a defendant's proximity to the drugs may constitute some evidence of constructive possession. *Id.* In addition, a defendant's conviction for drug possession can be based upon circumstantial evidence of possession. *State v. DeSarro*, 7th Dist. Columbiana No. 13 CO 39, 2015-Ohio-5470, 2015 WL 9594330, ¶ 41.

*State v. Orrell*, 2024-Ohio-1194, ¶ 42-43 (7th Dist.).

{¶25} Regarding complicity, R.C. 2923.03 states in part:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

. . .

(2) Aid or abet another in committing the offense;

. . .

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

R.C. 2923.03(A)(2) and (F).

{¶26} Again, in the Spring of 2023, detectives with BCSD began an investigation into a man named T.O. "Teddy" Coleman. Coleman had been previously arrested by another law enforcement agency in Belmont County. BCSD began seeing him at an area hotel and started surveilling him. They noticed that Coleman began frequenting an

Case No. 24 BE 0058

address in Bellaire, Belmont County, Ohio. On June 13, 2023, detectives installed a pole camera on Trumbull Street in Bellaire in order to surveil a resident duplex, 4152 and 4154 Trumbull Street. Detectives observed what they believed to be drug transactions occurring at the addresses. They were able to identify Appellant as frequently being at the addresses.

{¶27} On June 19, 2023, based on the observations from the pole camera, officers applied for a search warrant for both addresses of the duplex. Appellant and Leasure were found on the 4154 side of the building. On that side, officers located a safe in the upstairs bedroom closet. The safe was removed from the closet and forced open. Located inside were blue round pills, which later were found to contain fentanyl. They also found a crystalline substance in a bag as well as paraphernalia. In the same room, officers found a Glock 43 handgun that had been reported stolen by Leasure. Appellant and his small child were located in the bedroom. Officers also found blue pills on the window sill, the white chunky substance on the roof, the two cell phones in the bedroom, and the multi-color pills in the bedroom safe.

{¶28} Two cell phones were recovered from the residence and analyzed. Appellant was identified as owning one of the phones. Detectives indicated there were people messaging Appellant's phone asking about drugs. Individuals would arrive around the time of the messages. Messages were in code and recognized by the detectives as describing drugs, i.e., texts would include the words, "[b]lue monsters" and "blues" which referred to blue pressed fentanyl pills. (12/17/2024 Bench Trial Tr., p. 168). Messages revealed exchanges with individuals about purchasing drugs, as well as Appellant purchasing a pill press, which was delivered after his arrest.

{¶29} The State pointed to substantial evidence, as stated and addressed above in detail, that reasonably supported that Appellant exerted control over the drugs at issue which was sufficient to support the possession charges. Again, a defendant's proximity to drugs may constitute some evidence of constructive possession and a defendant's conviction for drug possession can be based upon circumstantial evidence of possession. *See Orrell*, 2024-Ohio-1194, at ¶ 43 (7th Dist.).

{¶30} The trial court chose to believe the State's witnesses. *DeHass,* 10 Ohio St.2d at paragraph one of the syllabus. Based on the evidence presented, the court did

not clearly lose its way in finding Appellant guilty of possession of a fentanyl-related compound and aggravated possession of drugs (methamphetamine). *Thompkins,* 78 Ohio St.3d at 387.

{¶31} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS NOT SUPPORTED BY THE RECORD.**

{¶32} In his second assignment of error, Appellant contends his consecutive sentences are not supported by the record.

R.C. 2929.14(C)(4) states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

In reviewing consecutive sentence arguments, the appellate court's standard of review is not whether the sentencing court abused its discretion; rather, the question is whether the appellate court "clearly and convincingly finds" (1) the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or (2) the sentence is otherwise contrary to law. R.C. 2953.08(G)(2)(a)-(b). A clear and convincing standard involves "a firm belief or conviction" (and is a higher standard than a mere preponderance of the evidence). *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

"In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. A sentence is contrary to law if the sentencing court fails to make the statutory consecutive findings. *Id.* (remanding for resentencing where the findings were not made at the sentencing hearing or in the entry).

Pursuant to R.C. 2929.14(C)(4), a felony sentencing court can impose consecutive sentences after finding: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the three options thereafter listed as (a) through (c). R.C. 2929.14(C)(4)(a)-(c). "(A) word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that

the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 140 Ohio St.3d 209 at ¶ 29.

*State v. Jensen*, 2023-Ohio-4717, ¶ 6-8 (7th Dist.).

The Ohio Supreme Court has . . . spoken on the standard by which an appellate court should review a trial court's consecutive sentences findings. In *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5, the Ohio Supreme Court reconsidered its prior decision in *State v. Gwynne*, 2022-Ohio-4607, —— N.E.3d ——, and held that "(t)he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."

*State v. Grant*, 2023-Ohio-4614, ¶ 23 (5th Dist.).

The Ohio Supreme Court has now made it clear that "an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences." *Gwynne*, 2023-Ohio-3851, ¶ 15. "The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings." *Id.* Thus, the Ohio Supreme Court in 2023 *Gwynne* specifically rejected the holding in 2022 *Gwynne* with respect to conducting a de novo review. *Id.* In short, we should review the sentence imposed by the trial court and only reverse if the record does not clearly and convincingly support the trial court's findings. *Gwynne*, 2023-Ohio-3851; *Grant* at ¶ 23.

*State v. Rivers*, 2024-Ohio-4868, ¶ 72-73 (7th Dist.).

{¶33} At the sentencing hearing, the trial court heard from the prosecutor on behalf of the State, defense counsel on behalf of Appellant, and Appellant.

Case No. 24 BE 0058

**{¶34}** In imposing consecutive sentences, the trial court found the following:

THE COURT: Again, I have considered the entire record in this matter. I did - - today's statements and/or other statements from the case.

I did review the prior presentence investigation report from his prior case in this Court, which is Case No. 21 CR 322.

I've considered the purposes and principles of sentencing, attempted to balance the seriousness and recidivism factors.

And again, the Court does note that the charge in Count I carries a mandatory maximum stated minimum term.

The factors that I have considered that indicate more serious conduct, more likelihood of recidivism include the following:

First of all, I reviewed the sentencing entry, took judicial notice of that from the prior case. I will adopt and incorporate all of those findings herein.

Secondly, the Court notes that in that case, he received a community control sentence, but then violated his terms of supervision, such that it was converted to a prison sentence, which he then concluded.

The other factors I've considered that are - - these are my findings: In concert with one Jade Leasure, he was engaged in a plan and scheme to possess large quantities of illegal drugs to be used and/or sold; and that there has been no showing of remorse on his part.

The factors that indicate less serious conduct, less likelihood of recidivism are absent from the record.

Again, the purposes of felony sentencing are to protect the public from future crimes by this offender and others and to administer punishment using the minimum sanctions that the Court determines accomplishes those

purposes without imposing an unnecessary burden on State or local government resources.

Court is also going to find that consecutive sentences are necessary here to protect the public from future crime and to punish this defendant. Consecutive sentences are not disproportionate to the seriousness of his conduct, the danger that it posed to the public.

These offenses were committed as part of a course of conduct. The harm caused or - - may have been caused thereby was so great or unusual that no single prison term for either of the offenses reflects the seriousness of the conduct.

Further his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

In light of all of this guidance, I am going to find that more than the minimum sentence is necessary, appropriate and reasonable, as are consecutive sentences.

Therefore, consecutive - - a short sentence or the shortest or nonconsecutive sentences, or any other combination of sanctions, including that he's not eligible for a community control sentence, will not adequately punish him and protect the public from future crime; would demean the seriousness of what he has done.

The factors decreasing seriousness, of which there are none, are greatly outweighed by those increasing seriousness. There is more likelihood of recidivism if he is given a short or nonconsecutive sentences.

Finally, again, I'll point out the charge in Count I mandates a maximum stated minimum term.

(12/18/2024 Sentencing Hearing Tr., p. 11-15).

Case No. 24 BE 0058

{¶35} The trial court made a similar pronouncement in its December 23, 2024 sentencing entry. The court again specifically stated:

> The Court found that the State proved beyond a reasonable doubt all of the elements of the two Drug Possession charges under both the theories of constructive possession and complicity as aiding and abetting another in the possession of a Fentanyl-Related Compound and Methamphetamine. The Court also found that the Fentanyl-Related Compound equaled or exceeded five hundred unit doses but was less than one thousand unit doses and that the Methamphetamine equaled or exceeded five times the bulk amount but was less than fifty times the bulk amount.

> Finally, the Court found that Jade Leasure, who claimed sole possession of the substances, was less than credible.

> The Court immediately conducted the sentencing hearing. Defendant was afforded all rights pursuant to Criminal Rule 32. The Court has considered the record, the oral statements, the Sentencing Entry from Defendant's prior conviction, and the Presentence Investigation Report from Defendant's prior conviction, as well as the principles and purposes of sentencing in Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Revised Code 2929.12.

> The State did not submit a claim for restitution.

> The Court has considered the purposes and principles of sentencing set forth in Revised Code 2929.11 and the factors contained in Ohio Revised Code 2929.12(B), (C), (D), and (E), and any other factors relevant to achieving those purposes and principles. The Court notes that the charge in Count I mandates a maximum stated minimum term.

> In light of that guidance, the Court finds that the factors contained in Ohio Revised Code 2929.12(B) and (D) and in 2929.13(B)(2) which indicate

more serious conduct and more likelihood of recidivism include the following:

1. The Court adopts all of the factors listed in the Sentencing Entry from Defendant's prior conviction in his Case Number 21 CR 322;

2. The Court also notes that Defendant violated his terms of community control supervision for that case resulting in a prison sentence;

3. In concert with Jade Leasure, Defendant was engaged in a plan and scheme to possess large quantities of illegal drugs, to be used and/or sold;

4. Defendant has not been rehabilitated as shown by his record; and

5. Defendant has not shown genuine remorse.

In accordance with Ohio Revised Code 2929.12(C) and (E), the factors which suggest that his conduct is less serious and that recidivism is less likely, are absent from the record.

The Court further finds in accordance with Ohio Revised Code 2929.11(A), that the overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender, using the minimum sanctions that the Court determines accomplishes these purposes, without imposing an unnecessary burden on State or local government resources.

The Court further finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Consecutive sentences are not disproportionate to the seriousness of Defendant's conduct and to the danger he poses to the public. These offenses were committed as part of a course of conduct, and the harm caused thereby was so great or unusual that no single prison term for either of the offenses

Case No. 24 BE 0058

committed as part of the conduct adequately reflects the seriousness of the offender's conduct.

Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

In light of that guidance, the Court finds that more than the minimum sentence is deemed necessary and is otherwise appropriate and reasonable, as are consecutive sentences. Therefore, in accordance with Ohio Revised Code 2929.13(B) and (D) the Court finds that the shortest sentence or nonconsecutive sentences will not adequately punish Defendant and protect the public from future crimes and will demean the seriousness of the offenses. The factors decreasing seriousness, of which there are none, are greatly outweighed by those increasing seriousness and that there is more likelihood of recidivism if Defendant is given a shorter sentence or nonconsecutive sentences. Finally, a prison sentence is mandatory for each charge.

The Court makes all findings based upon the sentencing factors contained in Ohio Revised Code 2929.11, 2929.12, 2929.13 and 2929.14, as such have been amended and/or modified by *State v. Foster*, 109 Ohio St.3d 1, and in accordance with House Bill 86, effective September 30, 2011, and Senate Bill 160, effective March 22, 2013.

(12/23/2024 Sentencing Entry, p. 3-5).

{¶36} Appellant concedes "[t]he trial court made the required findings to impose consecutive sentences, both at Appellant's sentencing hearing and in its sentencing entry." (5/19/2025 Appellant's Brief, p. 13). However, Appellant believes the court's "findings were not supported by the record" because he was convicted of possession, which is not as serious as trafficking, and there was no evidence of a "course of conduct." (*Id.* at p. 13-14).

Case No. 24 BE 0058

{¶37} The record in this case reflects no sentencing error. The trial court gave due deliberation to the relevant statutory considerations and properly advised Appellant regarding post-release control. The court considered the purposes and principles of felony sentencing under R.C. 2929.11, balanced the seriousness and recidivism factors under R.C. 2929.12, and considered the prison factors under R.C. 2929.13.

{¶38} In addition, the trial court made the requisite consecutive sentence findings, which are supported by the record, at the sentencing hearing and in its sentencing entry. The testimony from the bench trial establishes Appellant was shown to be in possession of more than 600 doses of a fentanyl-related compound and 38 doses of methamphetamine. The court was aware of Appellant's prior convictions, including Case No. 21 CR 322. The prior criminal record section in Appellant's PSI is nearly three pages long. Appellant has a history of misdemeanor and felony offenses, including convictions for drug possession, trafficking, and distribution. Appellant has also served prior prison terms.

{¶39} The trial court found that consecutive sentences are necessary to protect the public from future crime or to punish Appellant and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. R.C. 2929.14(C)(4). The court found these offenses were committed as part of a course of conduct and the harm caused thereby was so great or unusual that no single prison term for either of the offenses committed as part of the course of conduct adequately reflects the seriousness of Appellant's conduct. R.C. 2929.14(C)(4)(b). The court also found Appellant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.14(C)(4)(c).

{¶40} Accordingly, the trial court considered R.C. 2929.11, 2929.12, and 2929.13, and its imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4)(b) and (c) is supported by the record.

{¶41} Appellant's second assignment of error is without merit.

## CONCLUSION

{¶42} For the foregoing reasons, Appellant's assignments of error are not well-taken. The December 23, 2024 judgment of the Belmont County Court of Common Pleas

convicting Appellant of possession of a fentanyl-related compound and aggravated possession of drugs (methamphetamine) and consecutively sentencing him to a total aggregate sentence of 15 to 20 and one-half years in prison following a bench trial is affirmed.


Robb, P.J., concurs.

Hanni, J., concurs.

[Cite as *State v. Smith*, 2025-Ohio-4578.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**